IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KELLY CONARD                                   :
               Plaintiff              :
   v.                                                :   4:CV-06-01450
                                                 :   (JUDGE VANASKIE)
PENNSYLVANIA STATE POLICE, DENNIS   :
HILE, JOSEPH TRIPP                           :
               Defendants          :

## MEMORANDUM

Currently before the Court is Plaintiff Kelly Conard's claim that the Pennsylvania State Police Department's decision not to hire her was in violation of her equal protection rights and in retaliation for past protected speech. Plaintiff contends that the decision was based on the recommendation of two former supervisors, Defendants Dennis Hile and Joseph Tripp, who she claims retaliated against her for past conduct. Currently before the Court is Sergeant Hile and Corporal Tripp's Motion for Summary Judgment. (Dkt. 44.)[1] For the reasons that follow, Defendants' Motion will be granted.

## I. UNDISPUTED FACTS

Plaintiff was employed as a Police Communications Operator ("PCO") with the Pennsylvania State Police ("PSP") from 1985 until November 2002, when she voluntarily retired to join her husband who was serving in the military in Texas. (Defendants'

---

[1] For the convenience of the reader of this Memorandum opinion, hyperlinks to the Court's electronic record and to authority cited herein have been inserted. No endorsement of any provider of electronic resources is intended by the Court's practice of using hyperlinks.

Statement of Undisputed Material Facts ("DSUMF"), Dkt. 44-3, at ¶¶ 1, 3.)  A PCO is primarily responsible for answering phone calls regarding police services and dispatching messages to state troopers.  (Id. at ¶ 2.)  These functions are vital to the operation of each PSP station.  (Id.)

During the course of her employment with the PSP, there was a period of time in which Plaintiff reported to Corporal Joseph Tripp and Sergeant Dennis Hile.  Plaintiff asserts that the only contact she had with Corporal Tripp was when she worked the day shift, but that he would single her out and treat her differently than other PCOs.  (Conard Declaration, Dkt. 55, at ¶ 3.)  Plaintiff alleges that she was reprimanded for not properly identifying herself during a busy period, while other PCOs were not; that Corporal Tripp refused to offer her assistance with paperwork; that he criticized what she wore to work; that he would not approve a personal leave request; and that he placed Plaintiff on a "sick leave restriction." (Id. at ¶¶ 4-7.)  Plaintiff alleges she brought these facts to Lieutenant Ken Hill's attention, asserting that Corporal Tripp was "picking" on her, to which Lieutenant Hill responded, "just do what Tripp says."  (Id. at ¶ 8.)

Sergeant Hile, Plaintiff alleges, was involved in her placement on "sick leave restriction" and treated Plaintiff unfairly as a result of her reporting a shooting incident to Sergeant Hile's supervisor.  (Id. at ¶ 7-9.)  Plaintiff alleges that one evening when Sergeant Hile was the Officer of the Day, she called him requesting backup for troopers who were

2

involved in a shooting incident; Sergeant Hile apparently refused to take immediate action, and as a result of his refusal, she broke the chain of command and called Lieutenant Witherite, who promptly responded. (Id. at ¶ 9.) Other than the incidents described, Plaintiff reports little to no interaction between herself and Corporal Tripp or Sergeant Hile.

After resigning from her position as a PCO, Plaintiff was employed by American Medical Response in Texas as an emergency dispatcher. (Id. at ¶ 20.) She held this position for less than three months, leaving due to stress. (Id.) In August 2004, while still in Texas, Plaintiff contacted Dianna Davis of the PSP and notified her that she wanted to come back to work for the PSP. (Id. at ¶ 4; Plaintiff's Statement of Undisputed Material Facts ("PSUMF"), Dkt. 50, at ¶ 4.) Plaintiff completed the necessary paperwork and in November 2004, applied for a position as a PCO at the Harrisburg Centralized Dispatch Center. (DSUMF, Dkt. 44-3, at ¶ 4.) The selection process for the PCO position consisted of an interview and a background investigation, both of which required satisfactory results in order to be selected for the position. (Id. at ¶¶ 5-6.)

Plaintiff interviewed for the position on January 4, 2005. (PSUMF, Dkt. 50, at ¶ 4.) "Plaintiff was told by Bob Scott that she aced the interview and just needed to get the formalities out of the way." (Id.) She also spoke to Sergeant Lambert, who advised her that training was to begin in March, and Dianna Davis, who advised that starting pay would be around $20.83 an hour. (Id.)

3

Plaintiff, in fact, had not been selected for the position based on a background investigation conducted by Trooper Elling. (DSUMF, Dkt. 44-3, at ¶¶ 7 and 9; PSUMF, Dkt. 50, at ¶ 4.) During the course of the investigation, Elling spoke to Plaintiff's former supervisors, Sergeant Hile and Corporal Tripp, and conducted a credit check. Sergeant Hile and Corporal Tripp indicated that Plaintiff had abused sick leave during her previous employment with the PSP and had been place on leave restriction. (DSUMF, Dkt. 44-3, at ¶ 11.) Plaintiff's credit history revealed financial problems. Plaintiff attributed these problems to her divorce; however, of her fourteen accounts, ten were opened after her divorce. (PSUMF, Dkt. 50, at ¶ 16, DSUMF, Dkt. 44-3, at ¶ 18.) The PSP view credit history as an indicator of an applicant's acceptance of responsibility and reliability, which are essential for the PCO position. (Bonney Declaration, Dkt. 46-2, at ¶ 11.) As a result of Trooper Elling's investigation, Plaintiff was not recommended for employment and was informed by letter in February 2005 of this decision. (DSUMF, Dkt. 44-3, at ¶ 23.)

On November 5, 2005, Plaintiff filed a charge of gender discrimination with the EEOC and the Pennsylvania Human Relations Commission. (EEOC Charge, Dkt. 46-5.) On July 24, 2006, she filed the current action against Defendants PSP, Corporal Tripp, and Sergeant Hile, alleging, in part, violation of her equal protection rights under 42 U.S.C. § 1983 and First Amendment retaliation by Sergeant Hile and Corporal Tripp. Sergeant Hile and Corporal Tripp filed the current Motion for Summary Judgment. (Dkt. 44.) The Motion

has been fully briefed and oral argument was held on January 15, 2009.[2]

II.  DISCUSSION

A. Standard of Review

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).  "Facts that could alter the outcome are material facts." Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 197 (3d Cir. 1994). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Initially, the moving party must show the absence of a genuine issue concerning any

---

[2] Defendant PSP also filed a Motion for Summary Judgment.  (Dkt. 42.)  That motion was granted based on Plaintiff's concessions regarding failure to exhaust administrative remedies under Title VII and PSP's Eleventh Amendment immunity to suit under the Pennsylvania Human Relations Act.  (Dkt. 66.)  Plaintiff also conceded that there is no proof to support the allegation that Plaintiff had a protected property interest, and that thus, any procedural due process claim against Defendants is without merit.  Plaintiff also conceded that Sergeant Hile and Corporal Tripp are immune from liability for any interference with prospective contractual relation claim.  Thus, only the equal protection and First Amendment retaliation claims remain against Sergeant Hile and Corporal Tripp.

5

material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its burden, the nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257. Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials. Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). Rule 56 requires the entry of summary judgment if there was adequate time for discovery and a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

B. Retaliation

    Plaintiff asserts that Defendants' actions were in retaliation for protected speech she made while employed by the PSP. (Dkt. 52, at 6.)

> A public employee makes a protected statement for purposes of a First Amendment retaliation claim 'when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the governmental employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement.'

Skrutski v. Marut, 288 Fed. App'x 803, 806 (3d Cir. 2008) (quoting Hill v. Borough of Kutztown, 455 F.3d 225, 241-42 (3d Cir. 2006)).  If, however, a public employee makes a statement during the course of the employee's official duties, the employee is not speaking as a citizen for First Amendment purposes, and thus "'the Constitution does not insulate [his or her] communications from employer discipline.'"  Id. (quoting Garcetti v. Ceballos, 547 U.S. 410, 421 (2006)).  That is, "statements made by a public employee carrying out official duties . . . are not entitled to First Amendment Protection."  Garvey v. Barnegat Bd. of Educ., Civ. Act. No. 07-6134, 2008 WL 2902617, at * 6 (D.N.J. July 24, 2008).

"'Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.'"  Hill, 455 F.3d at 242 (quoting Rankin v. McPherson, 483 U.S. 378, 384 (1987)).  "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment."  Connick v. Myers, 461 U.S. 138, 146 (1983).  "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency . . . ."  Id. at 147.

Plaintiff alleges that "she was retaliated against by defendant Sergeant Hile for going outside of the chain of command and making public statements about the safety and security of the public by not providing proper police manpower in dangerous situations." (Brief in Opp. to Mt. S.J., Dkt. 52, at 7.)  Plaintiff appears to be referencing the phone call she made to Lieutenant Witherite about Sergeant Hile's failure to respond to the shooting incident.

This phone call was not a public statement, but instead a call made during the course of Plaintiff's duties as a PCO.  Any statements made during the course of Plaintiff's call were communications made during the course of Plaintiff's official duties and thus unprotected speech.  See Skrutski, 288 Fed. App'x at 806.  Plaintiff received the phone call from the troopers in need of assistance while working as a PCO.  A PCO's duties include answering phone calls regarding police services and dispatching messages to state troopers–Plaintiff's calls to Sergeant Hile and Lieutenant Witherite were clearly acts performed during the course of her duties and within her capacity as a PSP PCO. See Skrutski, 288 Fed. App'x at 806; Garvey, 2008 WL 2902617, at * 6.

Moreover, Plaintiff's claim that Corporal Tripp "picked" on her does not involve a matter of public concern.  Even assuming that Plaintiff made her complaints to Lieutenant Hill as a citizen, and not as an employee, which based on the evidence presented appears unlikely, Plaintiff has failed to allege that the statement involved a matter of public concern.

See Hill, 455 F.3d at 241-42.  Plaintiff alleges that Corporal Tripp reprimanded her for not identifying herself when she answered the phone, refused to assist her with paperwork, criticized what she wore to work, and refused to approve a personal day request.  (Affidavit, Dkt. 55, at ¶¶ 4-8.)  Plaintiff claims that she approached Lieutenant Hill about Corporal Tripp picking on her, and that as a result of her communications, Corporal Tripp's actions became more offensive.  (Id. at ¶ 8.)

The alleged communication, however, does not involve a matter of public concern.  What Plaintiff wore to work, approval of a personal day, refusal of assistance, and reprimanding an employee for improperly answering the phone are not matters that concern the public.  Connick, 461 U.S. at 146.  Plaintiff's statements were not related to a matter concerning the community, politics, or any other social concern.  It is clear that Plaintiff's complaint regarded an employment matter over which the government enjoys wide latitude in determining appropriate action, without intrusion from the judiciary under the guise of the First Amendment.  Id.  "[W]hile the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'"  Garcetti, 547 U.S. at 420 (quoting Connick, 461 U.S. at 154).

Moreover, Plaintiff's argument that her speech became protected once she retired from the PSP in 2002 is without merit.  Plaintiff has provided no case law in support of this proposition, nor can the Court find any to this effect.  Plaintiff's speech was not protected

speech when it was made, and her past unprotected speech does not transform into protected speech after her retirement. Thus, Defendants' Motion for Summary Judgment regarding the First Amendment retaliation claim will be granted.

C. Equal Protection

Plaintiff also asserts an equal protection violation under the class-of-one theory as announced in Village of Willowbrook v. Olech, 528 U.S. 562 (2000). "'The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or agents.'" Village of Willowbrook, 528 U.S. at 564 (quoting Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 445 (1923)). In Olech, the Court determined that a successful equal protection claim may be brought by a class-of-one, where "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. Olech, however, has since been limited by Engquist v. Oregon Dep't of Agriculture, 128 S.Ct. 2146 (2008), which held that the class-of-one theory of equal protection is not applicable in the public employment context.

> In concluding that the class-of-one theory of equal protection has no application in the public employment context – and that is all we decide – we are guided, as in the past, by the 'common-sense realization that government offices could not function if every employment decision became a constitutional matter.' If . . . plaintiffs need not claim discrimination on the basis of membership in some class or group, but rather may argue only that

> they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim.  Indeed, an allegation of arbitrary differential treatment could be made in nearly every instance of an assertedly wrongful employment action – not only hiring and firing decisions, but any personnel action, such as promotion, salary, or work assignments – on the theory that other employees were not treated wrongfully.

128 S.Ct. 2146, 2156 (citations omitted); see also Graham v. Hoffer, No. 1:05-cv-2679, 2008 WL 4570667, at *5-*6 (M.D. Pa. Oct. 10, 2008).

In Skrutski, 288 Fed. App'x 803, our Court of Appeals held that a class-of-one theory against four members of the PSP was a legal avenue which was "clearly foreclosed by the Supreme Court's recent decision that such claims are not cognizable in the public employment context."  As observed in Bowman v. Burroughs, No. 07-185, 2008 WL 5427910 (W.D. Pa. Dec. 30, 2008), which held that Engquist applied to a police officer's equal protection claim alleging unconstitutional discharge against PSP officers:

> In Engquist, the Supreme Court explained that the 'class of one' theory of equal protection is inapplicable to the public employment context because 'employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify.'  This Court 'is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies.'

Bowman, 2008 WL 5427910, at *16 (quoting Engquist, 128 S.Ct. at 2154; Bishop v. Wood, 426 U.S. 341, 349 (1976)).

Plaintiff alleges that Corporal Tripp treated her differently from other employees,

11

because he tried to impose discipline on her, but not others, and made comments about her clothing.  (Dkt. 52, at 13.)  Plaintiff fails to allege how, if at all, Sergeant Hile violated her equal protection rights, and differentiates her case from Engquist by arguing that the results of the alleged discrimination occurred when she was a private citizen and no longer a public employee.  (Oral Arg. Trans. at 21.)

It is clear that a former state employee may not simply create a discrimination claim by alleging "arbitrary differential treatment."  Engquist, 128 S.Ct. 2156.  "'[E]mployment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify.'"  Bowman, 2008 WL 5427910, at *16.  Moreover, the unsubstantiated assertions of Plaintiff that she was treated more harshly than co-workers does not constitute competent evidence upon which a reasonable jury could find in her favor.  See Anderson, 477 U.S. at 248; Schoch, 912 F.2d at 657 ("the object of Rule 56(e) 'is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit'").  Because Plaintiff is not alleging that the Defendants treated a distinct group of individuals differently, but instead, is solely rely on the class-of-one theory, which is unavailable in the public employment context, Defendants' Motion for Summary Judgment will be granted.  See Engquist, 128 S.Ct. 2146; Skrutski, 288 Fed. App'x 803; Bowman, 2008 WL 5427910, at *16.

III.    Conclusion

Because Plaintiff has failed to tender sufficient evidence to establish a prima facie case of First Amendment retaliation or violation of her equal protection rights, Defendants' Motion for Summary Judgment will be granted.  An appropriate Order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELLY CONARD : | |
| Plaintiff : | |
| v. : | 4:CV-06-01450 |
| : | (JUDGE VANASKIE) |
| PENNSYLVANIA STATE POLICE, DENNIS : | |
| HILE, JOSEPH TRIPP : | |
| Defendants : | |

## ORDER

NOW, THIS 25th DAY OF FEBRUARY, 2009, for the reasons set forth in the foregoing memorandum, IT IS HEREBY ORDERED THAT:

1. Defendants' Dennis Hile and Joseph Tripp's Motion for Summary Judgment (Dkt.44) is GRANTED.

2. The Clerk of Court is directed to enter judgment in favor of Defendants Dennis Hile and Joseph Tripp on Plaintiff's claims, and to mark this matter CLOSED.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge